**Larry Lomax**                         *          IN THE
620 Fallsway
Baltimore, MD 2120~~0~~;  APR 19  FM 3: 32   *          CIRCUIT COURT

and                   CIVIL DIVISION   *          FOR

**Albert Tubman**                       *          BALTIMORE CITY
129 North Kenwood Street
Baltimore, MD 21224;                    *          CASE NO.: _____

and                                     *

**Eric Glass**                          *
1415 Mount More Court
Baltimore, MD 21217;                    *

and                                     *

**Roosevelt Johnson**                   *
1813 West Lafayette Street
Baltimore, MD 21217;                    *

and                                     *

**Andrew Fischer**                      *
245 Ipswich Road
Boxford, MA 01921;                      *

and                                     *

**Myreq Williams**                      *
2825 Maudlin Ave.
Baltimore, MD 21230;                    *

      *Plaintiffs*,       *

      v.                  *

**Lieutenant Christopher O'Ree**        *
(individually, and in his official capacity as a
police officer)                         *
Baltimore City Police Department
601 East Fayette Street                 *
Baltimore, MD 21202;
                                        *
and

&ast;

**Sergeant Keith Gladstone**
(individually, and in his official capacity as a   &ast;
police officer)
Baltimore City Police Department   &ast;
601 East Fayette Street
Baltimore, MD 21202;   &ast;

and   &ast;

**Sergeant Joseph Landsman**   &ast;
(individually, and in his official capacity as a   &ast;
police officer)
Baltimore City Police Department
601 East Fayette Street   &ast;
Baltimore, MD 21202;
&ast;

and   &ast;
&ast;

**Detective Daniel Hersl**
(individually, and in his official capacity as a   &ast;
police officer)
Baltimore City Police Department   &ast;
601 East Fayette Street
Baltimore, MD 21202;   &ast;

and   &ast;

**Officer Robert Hankard**   &ast;
 (individually, and in his official capacity as a
police officer)   &ast;
Baltimore City Police Department
601 East Fayette Street   &ast;
Baltimore, MD 21202;
&ast;

and   &ast;
&ast;

**Officer Mark Neptune**
(individually, and in his official capacity as a   &ast;
police officer)
Baltimore City Police Department   &ast;
601 East Fayette Street
Baltimore, MD 21202;   &ast;

and   &ast;

2

**Officer James Craig**                                      *
(individually, and in his official capacity as a
police officer)                                             *
Baltimore City Police Department
601 East Fayette Street                                     *
Baltimore, MD 21202;
                                                            *
and
                                                            *
**Anthony Batts**
(individually, and in his official capacity as             *
Commissioner)
Baltimore City Police Department                           *
601 East Fayette Street
Baltimore, MD 21202;                                       *

and                                                         *

**Baltimore City Police Department**                        *
601 East Fayette Street
Baltimore, MD 21202;                                       *

and                                                         *

**State of Maryland**                                       *
c/o Brian Frosh
Office of the Attorney General                             *
200 Saint Paul Place
Baltimore, MD 21202;                                       *

and                                                         *

**Unidentified Officer #1**                                 *
(individually, and in his official capacity as a
police officer)                                             *
Baltimore City Police Department
601 East Fayette Street                                     *
Baltimore, MD 21202;
                                                            *
and
                                                            *
**Unidentified Officer #2**
(individually, and in his official capacity as a           *
police officer)
Baltimore City Police Department                           *
601 East Fayette Street;

3

1438-040/314602

Baltimore, MD 21202;                                    *

and                                                    *

**Unidentified Officer #3**                            *
(individually, and in his official capacity as a
police officer)                                        *
Baltimore City Police Department
601 East Fayette Street                                *
Baltimore, MD 21202;
                                                       *
and                                                    *

**Unidentified Officer #4**                            *
(individually, and in his official capacity as a
police officer)                                        *
Baltimore City Police Department
601 East Fayette Street                                *
Baltimore, MD 21202;
                                                       *
and                                                    *

**Unidentified Officer #5**                            *
(individually, and in his official capacity as a
police officer)                                        *
Baltimore City Police Department
601 East Fayette Street                                *
Baltimore, MD 21202;
                                                       *
and                                                    *

**Unidentified Officer #6**                            *
(individually, and in his official capacity as a
police officer)                                        *
Baltimore City Police Department
601 East Fayette Street                                *
Baltimore, MD 21202;
                                                       *
and                                                    *

**Unidentified Officer #7**                            *
(individually, and in his official capacity as a
police officer)                                        *
Baltimore City Police Department
601 East Fayette Street                                *
Baltimore, MD 21202;

1438-040/ 314602

\*

and

\*

**Unidentified Officer #8**
(individually, and in his official capacity as a   \*
police officer)
Baltimore City Police Department   \*
601 East Fayette Street
Baltimore, MD 21202;   \*

and   \*

**Unidentified Officer #9**   \*
(individually, and in his official capacity as a
police officer)   \*
Baltimore City Police Department
601 East Fayette Street   \*
Baltimore, MD 21202;
  \*
and

  \*
**Unidentified Officer #10**
(individually, and in his official capacity as a   \*
police officer)
Baltimore City Police Department   \*
601 East Fayette Street
Baltimore, MD 21202;   \*

and   \*

**Unidentified Officer #11**   \*
(individually, and in his official capacity as a
police officer)   \*
Baltimore City Police Department
601 East Fayette Street   \*
Baltimore, MD 21202;
  \*
and

  \*
**Unidentified Officer #12**
(individually, and in his official capacity as a   \*
police officer)
Baltimore City Police Department   \*
601 East Fayette Street
Baltimore, MD 21202;   \*

5

1438-040/ 314602

and                                              *

**Unidentified Officer #13**                     *
(individually, and in his official capacity as a
police officer)                                  *
Baltimore City Police Department
601 East Fayette Street                          *
Baltimore, MD 21202;
                                                 *
and
                                                 *
**Unidentified Officer #14**
(individually, and in his official capacity as a *
police officer)
Baltimore City Police Department                 *
601 East Fayette Street
Baltimore, MD 21202;                             *

and                                              *

**Unidentified Officer #15**                     *
(individually, and in his official capacity as a
police officer)                                  *
Baltimore City Police Department
601 East Fayette Street                          *
Baltimore, MD 21202;
                                                 *
          *Defendants.*
                                                 *

*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiffs, Larry Lomax (hereinafter, "Lomax"), Albert Tubman (hereinafter, "Tubman"),

Eric Glass (hereinafter, "Glass"), Roosevelt Johnson (hereinafter, "Johnson"), Andrew Fischer

(hereinafter, "Fischer"), and Myreq Williams (hereinafter, "Williams") by their undersigned

attorneys hereby file this Complaint, and state as follows:

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this case.

2.    Baltimore City is the proper venue for this action pursuant to Maryland Code

6

Ann., Courts & Judicial Proceeding Article §§ 6-201 and 6-202.

3.      Plaintiffs have provided timely notice to the appropriate Defendants pursuant to the Local Government Tort Claims Act, Maryland Code Ann., Courts & Judicial Proceeding Article § 5-401.

## PARTIES

4.      Mr. Lomax is a twenty-four year-old African American male and a resident of Baltimore City at all times relevant to this Complaint.

5.      Mr. Tubman is a forty-five year-old African American male and a resident of Baltimore City at all times relevant to this Complaint.

6.      Mr. Glass is a twenty-seven year-old African American male and a resident of Baltimore City at all times relevant to this Complaint.

7.      Mr. Johnson is a forty-four year-old African American male and a resident of Baltimore City at all times relevant to this Complaint.

8.      Mr. Fischer is a twenty-one year-old Caucasian male who was injured in Baltimore City. He is an undergraduate student at American University, and the co-founder of News2Share.

9.      Mr. Williams is a twenty-one year-old African American male who was injured in Baltimore City at all times relevant to this Complaint.

10.     Defendants Identified and Unidentified Officers, at all times relevant to this Complaint, are/were Baltimore City police officers. As police officers, they acted as agents, servants, and/or employees of the Baltimore Police Department as well as the City of Baltimore, and acted within the scope of employment and under the color of state law. Defendants Identified and Unidentified Officers are sued in their individual and official capacities.

7

11.     Defendant Anthony Batts (hereinafter, "Batts"), was at all times relevant to this Complaint, the Commissioner of the Baltimore Police Department. In his capacity as Commissioner, Batts acted under the color of state law each time he exercised final policy-making authority for the police department; established the policies and procedures for screening, hiring, training, monitoring, and supervising police officers; and enforced the duties, conduct, and discipline of police officers and other employees. Batts acted as an agent, servant, and/or employee of the Baltimore Police Department as well as the City of Baltimore, and acted within the scope of his employment.

12.     Defendant Baltimore Police Department ("BPD") is a political subdivision and government agency of the State of Maryland. The BPD, through its agents, servants, and employees, hired, supervised, and trained each identified and unidentified officer named in this Complaint. By virtue of its status as a governmental entity that exercised the power delegated by the State of Maryland, the BPD acted under the color of state law when it hired, supervised, and retained, each officer named in this Complaint.

13.     Defendant State of Maryland is responsible for the acts, activity, and inaction of the BPD because the BPD is an expressly designated as an agency of the State of Maryland.

## FACTS COMMON TO ALL COUNTS

14.     During the aftermath of the death of Mr. Freddie Gray in April of 2015, citizens from around the country converged in Baltimore City. Beginning April 18, 2015, a series of protests and marches condemned the mistreatment and abuse of power by Baltimore City police officers. The overwhelming majority of protestors exercised their rights to freedom of assembly and freedom of speech in a law-abiding, peaceful manner. National and local media personnel covered the protests and reported many interactions between protestors and police officers. The

8

series of protests ended on May 4, 2015. In the midst of these protests and marches, Baltimore police officers once again tore apart the constitutionally-protected rights of the protestors and effectuated a variety of torts against them.

## I.   Larry Lomax

15.     On the evening of May 2, 2015, Mr. Lomax, a survivor of a deadly 2012 vehicular accident, which required him to re-learn how to walk, speak, and write, had planned to participate in a civil disobedience protest, along with a group of other citizens. During this protest, Baltimore City police officers were on duty monitoring the activities.

16.     That night, around 10:00 p.m., Mr. Lomax began crossing the intersection of North Avenue and Pennsylvania Avenue in Baltimore, MD. As he crossed the street, walking toward several police officers on the sidewalk, Mr. Lomax kept his arms at his sides and in view at all times. The street lamps showed that he neither carried nor displayed any weapon. He did not cause or attempt to cause any other protestor to follow him. Mr. Lomax was alone and unarmed with his hands in clear view as he walked.

17.     Before Mr. Lomax finished crossing the intersection, three uniformed police officers abruptly rushed up to him in the middle of the street. One of those officers, later identified as Lieutenant Christopher O'Ree, immediately hosed Mr. Lomax's face with a large canister of pepper spray from only a few feet away before Mr. Lomax could respond or react. By Lieutenant O'Ree's own subsequent testimony, the canister used was not the typical can of pepper spray carried by officers with their gear, but rather, an incapacitating spray used to disperse large crowds. Despite being unlawfully and unnecessarily doused with pepper spray, Mr. Lomax still stood with his hands by side in plain view and made no threatening movements toward the officers.

9

18.     Lieutenant O'Ree testified after the incident that the spray used on Mr. Lomax temporarily incapacitated the recipient, burned the eyes so that it became difficult to open them, and affected the mucus membranes. However, even as this spray incapacitated Mr. Lomax that night and he stumbled back out onto the street, another one of the officers, later identified as Sergeant Keith Gladstone, hurried around, and behind, Mr. Lomax. Sergeant Gladstone grabbed Mr. Lomax's hair, and wrenched him to the ground, on his back, using his hair, in the middle of the intersection.

19.     Still using Mr. Lomax's hair, Sergeant Gladstone maneuvered him onto his side and then onto his stomach on the street. Officers then handcuffed Mr. Lomax while he lay unmoving on the ground. As the media and other protestors came forward to look, several other officers hosed them with similar canisters of pepper spray.

20.     As Mr. Lomax lay there in the middle of the street, incapacitated, two officers dragged him on his stomach, by his cuffed hands, to the side of the curb. Three officers, later identified in court records as Sergeant Joseph Landsman and Officer Hankard, then picked Mr. Lomax up by his cuffed hands, the seat of his pants, and his ankles, and carried him onto the sidewalk. While Mr. Lomax lay there, spitting up the pepper spray, one of the officers pulled him up by the back of his neck, before laying him down again. The officer then plucked an open, half-empty, plastic water bottle lying at Mr. Lomax's feet on the sidewalk, and poured the water over his face in order to "administer aid."

21.     After an evaluation at a hospital, officers transported Mr. Lomax to Central Booking. They charged him with 2nd Degree Assault, Inciting a Riot, Curfew Violation, and Disorderly Conduct. Mr. Lomax's bail was set to $1,000.00, but he was not given an opportunity to speak with anyone for 14 days, and he did not have the opportunity to make a phone call until

10

20 days in prison. As a result of this delay, Mr. Lomax was not released until May 29, 2015, when a fellow activist posted the bail.

22.     The State nolle prossed the first three charges, and a jury acquitted Mr. Lomax of the "Disorderly Conduct" charge.

23.     As a result of the Defendants' misconduct, Mr. Lomax suffered through physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, incapacitation, burning, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of legal proceedings, lost wages, and other expenses.

## II.     Albert Tubman

24.     On the evening of April 25, 2015, citizens from and around Baltimore had planned to participate in protests condemning the death of Mr. Freddie Gray. During the protests that day, Baltimore City police officers were on duty monitoring the activities.

25.     That evening, Mr. Tubman, a survivor of previous police brutality—who had suffered punching, kicking, and stomping by Baltimore police—did not participate in the protests. When he drove to the 1000-block of Monument Street in Baltimore, MD and walked out of his car, he observed the protests. However, not wanting to participate, he turned to walk back to his car and leave the area.

26.     As Mr. Tubman walked back, an unidentified officer approached him. The officer immediately knocked Mr. Tubman to the ground. He then hit Mr. Tubman about three times on the left side of the body with a baton. After this, the officer handcuffed him and transported him to the Western District police station, instead of providing medical attention.

27.     At the police station, Mr. Tubman asked about the charges against him, and the officer replied that he had been charged with robbery. Mr. Tubman protested this charge,

11

insisting that the officer had mistaken him for someone else. When the officer showed Mr. Tubman's picture to the victim of the robbery, she confirmed that Mr. Tubman was not the person who robbed her.

28.     Officers then transported Mr. Tubman to Central Booking and charged him with 2nd Degree Assault, Carrying a Dangerous Weapon with Intent to Injure, Rioting, and Disorderly Conduct. Officers detained Mr. Tubman at Central Booking for approximately 24 hours. Of those 24 hours, they detained him for about 12 hours after he had been "released" on a $50,000.00 bail.

29.     At one point, when Mr. Tubman tried to ask his arresting officer his name, the officer demanded, "What the fuck do you need to know my name for?" When Mr. Tubman tried to look at the officer's name badge, the officer turned away, and declared, "Don't look at me."

30.     After Mr. Tubman left Central Booking, he went to the hospital, where physicians diagnosed him with painful contusions on his left elbow and left hip.

31.     At his trial, the State nolle prossed all charges against Mr. Tubman.

32.     As a result of the Defendants' misconduct, Mr. Tubman suffered through physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

### III.     Eric Glass

33.     Also during the evening of April 25, 2015, while citizens protested the death of Mr. Gray, Mr. Glass, a single father of four children and a laborer at an industrial staffing company, decided to participate in the march and protests throughout the City. Baltimore City police officers remained on duty that evening as well.

12

34.     At one point, while protesting on Pratt Street in Baltimore, MD, Mr. Glass noticed Baltimore police officers assaulting protestors. As he observed this incident, he began to film the officers attacking the protestors.

35.     While Mr. Glass recorded this incident, the officers suddenly noticed him and rushed over to him. When they approached Mr. Glass, they immediately slammed him to the ground. The officers then proceeded to repeatedly kick and punch him. While they assaulted him, they also confiscated his cell phone.

36.     Mr. Glass was arrested and transported to the University of Maryland's Medical Center that night. His physician diagnosed him with a pinched nerve in the neck, abrasions on the back, a burst lip, and swollen hands from the tightness of the handcuffs. Within three hours however, officers transported Mr. Glass to Central Booking.

37.     They charged him with 2nd Degree Assault, Carrying a Dangerous Weapon with Intent to Injure, Rioting, and Disorderly Conduct. However, the State nolle prossed all charges.

38.     As a result of the Defendants' misconduct, Mr. Glass suffered through physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, a nerve injury that continued to bother him, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

### IV.     Roosevelt Johnson

39.     During the evening of April 25, 2015, police officers on duty overseeing the protests and marches for Mr. Gray, attacked Mr. Johnson as well.

40.     That evening, Mr. Johnson, who did not participate in the protests or march, left his sister's home on Lafayette Street in Baltimore, MD, to return home.

13

41.     As Mr. Johnson walked onto Mosher Street, several police officers abruptly came from around the corner of the street. The officers approached him and began beating him with a guard stick. Mr. Johnson weighed no more than 140 pounds and immediately fell to the ground.

42.     The officers then aggressively handcuffed him and verbally abused him. They transported him to the Western District police station. There, Mr. Johnson stated he was having trouble breathing. He was taken to Maryland General Hospital. At the hospital, physicians diagnosed Mr. Johnson with a bruised right lung, other bodily bruises, and cement burns.

43.     That same evening, Internal Affairs procured a recorded statement from Mr. Johnson, and also took photographs of the injuries his right side and right leg.

44.     The officers charged Mr. Johnson with 2nd Degree Assault, Carrying a Dangerous Weapon with Intent to Injure, Rioting, and Disorderly Conduct. However, the State nolle prossed all charges.

45.     As a result of the Defendants' misconduct, Mr. Johnson suffered through physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

### V.     Andrew Fischer

46.     On May 2, 2015, the same evening during which Baltimore police officers attacked Mr. Lomax, officers assaulted Mr. Fischer as well.

47.     Mr. Fischer, an American University college student, who also served as the co-founder, executive producer, and managing editor of News2Share, Inc., did not participate in the protests, but rather, used his media credentials to report on the events.

48.     That evening, Mr. Fischer began recording the protests, including the protestors

14

and police officers.

49.     While a 10:00 p.m. curfew remained in effect that day, the curfew exempted individuals with media credentials. Thus, Mr. Fischer, while properly displaying his media credentials, continued to record and report past 10:00 p.m.

50.     Around 10:08 p.m., Mr. Fischer started filming a group of police officers reacting to the protestors and other bystanders on the road. At all times, he stayed a safe distance away from the officers and protestors, but continued recording.

51.     At one point, Mr. Fischer caught on camera, an officer threatening to use a crowd-dispersal pepper spray on a Caucasian young woman wearing a backpack and appearing to leave a store, until she ran away, screaming, from the officer.

52.     At another point almost immediately after this incident, Mr. Fischer caught the same officers pushing and shoving protestors, ordering them to "keep moving."

53.     While Mr. Fischer filmed these events, the officers began chasing an apparent protestor on foot. Mr. Fischer also followed on foot, but from a great distance, capturing the chase.

54.     When the officers finally caught up with the protestor and proceeded to handcuff him, Mr. Fischer tried to record the arrest from a distance. However, the National Guard promptly ordered him to back off, and demanded his credentials and the identity of his employer.

55.     Mr. Fischer displayed his credentials, and one of the officers even acknowledged that he did, in fact, have proper media credentials and was permitted to stay outside in the area past the curfew.

56.     As the National Guard acknowledged these credentials, a Baltimore City police officer, later identified as Detective Daniel Hersl, approached Mr. Fischer from behind.

15

57.     Though the National Guard quickly informed Detective Hersl that Mr. Fischer had proper media credentials, Detective Hersl swiftly slammed Mr. Fischer down, face-first into the pavement, and replied, "I don't care."

58.     As officers arrested Mr. Fischer, they informed him that they were charging him with violating the curfew, in spite of Mr. Fischer displaying proper credentials. Mr. Fischer's colleague then decided to take possession of Mr. Fischer's belongings and camera, so that officer did not confiscate them.

59.     He also questioned the officers regarding the charges against Mr. Fischer. Twice, the officers replied that they had charged him with violating the curfew.

60.     However, after this, the officers altered the charge, and gave Mr. Fischer a civil citation for "disorderly conduct." They released him from detention that same evening, and informed him that he could either pay a $500.00 civil fine or stand trial. In its Notice of Dismissal of the allegations against Mr. Fischer, the City explicitly acknowledged, "no civil offense occurred."

61.     As a result of the Defendants' misconduct, Mr. Fischer suffered through physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of legal proceedings, lost wages, and other expenses.

## VI.     Myreq Williams

62.     On April 25, 2015, during the protests for Mr. Freddie Gray, police officers used unlawful force upon Mr. Williams in addition to committing other constitutional violations.

63.     That evening, Mr. Williams was trying to get to his grandmother's home in Baltimore, MD, before the 10:00 p.m. curfew. He left the protests on North Avenue and took the

16

#15 bus.

64.     When the bus pulled away from the stop, Baltimore City police officers began following the bus. They followed the bus until it reached the intersection of Belair Road and Parkside Avenue.

65.     At this point, the officers came onto the bus and pulled Mr. Williams off of the bus. They handcuffed him, and while doing so, employed such force, that they broke Mr. Williams' left arm.

66.     Mr. Williams requested immediate medical attention, and the officers transported him to Sinai Hospital. At Sinai, physicians confirmed that Mr. Williams' forearm had been broken; specifically, the officers had broken his radius in half at about half way between the wrist and elbow.

67.     After physicians confirmed the injury, the officers left the hospital. Mr. Williams was never charged or questioned after the diagnosis.

68.     Less than three months after this incident, around July 2, 2015, Mr. Williams was riding as a passenger in a friend's car, when Baltimore City police officers pulled the car over. Mr. Williams immediately recognized one of the officers from the April 25, 2015 incident.

69.     When the officers approached the car, the officer who had been involved in the April incident, later identified as Officer James Craig, stated that he also recognized Mr. Williams "from Belair Road."

70.     Officer Craig opened Mr. Williams' passenger door and asked Mr. Williams to step outside. He then asked Mr. Williams if he had any drugs, and when Mr. Williams replied in the negative, Officer Craig proceeded to search Mr. Williams' person.

71.     The officers did not search the driver of the car. Instead, they issued the driver a

17

citation for Failure to Wear a Seatbelt and left.

72.    As a result of the Defendants' misconduct, Mr. Williams suffered through physical, emotional, mental, and financial injuries, including, but not limited to, a broken arm, abrasions, contusions, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

## CAUSES OF ACTION

### COUNT I: Maryland Declaration of Rights Article 24 – Excessive Force
#### All Plaintiffs Against All Defendants

73.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

74.    The Defendants violated the Plaintiffs' civil rights and due process rights as set forth in the Declaration of Rights of the Maryland State Constitution. They committed intentional acts of misconduct, employed excessive force upon Plaintiffs, illegally detained and arrested Plaintiffs, falsely imprisoned Plaintiffs, and unlawfully deprived Plaintiffs of their liberty and property.

75.    The identified and unidentified officers in this Complaint acted as the BPD's and the State's agents, servants, and/or employees, when they employed excessive force, arrested, detained, and imprisoned the Plaintiffs without reasonable suspicion or probable cause to believe they had committed any criminal offenses. Further, the Defendants employed excessive force, detained, arrested, and imprisoned the Plaintiffs without legal basis or justification, and Plaintiffs did not have the freedom to leave during the detention, arrest, and imprisonment.

76.    As a result of these acts, Plaintiffs sustained physical, emotional, mental, and

18

financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses. Moreover, Defendants deprived Plaintiffs of their liberty and property without cause, in contravention of the Maryland State Constitution.

77.     The Defendants' conduct lacked any legal rationale and premised on actual malice and ill will. They intended to harm Plaintiffs when they employed excessive force, arrested, detained, and imprisoned Plaintiffs for criminal offenses in which the Plaintiffs had not participated.

78.     **WHEREFORE,** Plaintiffs demand that this Court enter judgment against the Defendants in an amount greater than $75,000.00 in damages plus costs and interest.

### COUNT II: Maryland Declaration of Rights Article 24 – Illegal Arrest

#### All Plaintiffs Against All Defendants

79.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

80.     The Defendants violated the Plaintiffs' civil rights and due process rights as set forth in the Declaration of Rights of the Maryland State Constitution. They committed intentional acts of misconduct, employed excessive force upon Plaintiffs, illegally detained and arrested Plaintiffs, falsely imprisoned Plaintiffs, and unlawfully deprived Plaintiffs of their liberty and property.

81.     The identified and unidentified officers in this Complaint acted as the BPD's and the State's agents, servants, and/or employees, when they employed excessive force, arrested, detained, and imprisoned the Plaintiffs without reasonable suspicion or probable cause to believe

19

they had committed any criminal offenses. Further, the Defendants employed excessive force, detained, arrested, and imprisoned the Plaintiffs without legal basis or justification, and Plaintiffs did not have the freedom to leave during the detention, arrest, and imprisonment.

82.     As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses. Moreover, Defendants deprived Plaintiffs of their liberty and property without cause, in contravention of the Maryland State Constitution.

83.     The Defendants' conduct lacked any legal rationale and premised on actual malice and ill will. They intended to harm Plaintiffs when they employed excessive force, arrested, detained, and imprisoned Plaintiffs for criminal offenses in which the Plaintiffs had not participated.

84.     **WHEREFORE,** Plaintiffs demand that this Court enter judgment against the Defendants in an amount greater than $75,000.00 in damages plus costs and interest.

### COUNT III: Maryland Declaration of Rights Article 24 – False Imprisonment

### All Plaintiffs Against All Defendants

85.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

86.     The Defendants violated the Plaintiffs' civil rights and due process rights as set forth in the Declaration of Rights of the Maryland State Constitution. They committed intentional acts of misconduct, employed excessive force upon Plaintiffs, illegally detained and arrested Plaintiffs, falsely imprisoned Plaintiffs, and unlawfully deprived Plaintiffs of their

20

liberty and property.

87.     The identified and unidentified officers in this Complaint acted as the BPD`s and the State's agents, servants, and/or employees, when they employed excessive force, arrested, detained, and imprisoned the Plaintiffs without reasonable suspicion or probable cause to believe they had committed any criminal offenses. Further, the Defendants employed excessive force, detained, arrested, and imprisoned the Plaintiffs without legal basis or justification, and Plaintiffs did not have the freedom to leave during the detention, arrest, and imprisonment.

88.     As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses. Moreover, Defendants deprived Plaintiffs of their liberty and property without cause, in contravention of the Maryland State Constitution.

89.     The Defendants' conduct lacked any legal rationale and premised on actual malice and ill will. They intended to harm Plaintiffs when they employed excessive force, arrested, detained, and imprisoned Plaintiffs for criminal offenses in which the Plaintiffs had not participated. .

90.     **WHEREFORE**, Plaintiffs demand that this Court enter judgment against the Defendants in an amount greater than $75,000.00 in damages plus costs and interest.

<u>**COUNT IV: Maryland Declaration of Rights Article 24 –**</u>
<u>**Deprivation of Liberty & Property**</u>

**All Plaintiffs Against All Defendants**

91.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

21

92.     The Defendants violated the Plaintiffs' civil rights and due process rights as set forth in the Declaration of Rights of the Maryland State Constitution. They committed intentional acts of misconduct, employed excessive force upon Plaintiffs, illegally detained and arrested Plaintiffs, falsely imprisoned Plaintiffs, and unlawfully deprived Plaintiffs of their liberty and property.

93.     The identified and unidentified officers in this Complaint acted as the BPD's and the State's agents, servants, and/or employees, when they employed excessive force, arrested, detained, and imprisoned the Plaintiffs without reasonable suspicion or probable cause to believe they had committed any criminal offenses. Further, the Defendants employed excessive force, detained, arrested, and imprisoned the Plaintiffs without legal basis or justification, and Plaintiffs did not have the freedom to leave during the detention, arrest, and imprisonment.

94.     As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses. Moreover, Defendants deprived Plaintiffs of their liberty and property without cause, in contravention of the Maryland State Constitution.

95.     The Defendants' conduct lacked any legal rationale and premised on actual malice and ill will. They intended to harm Plaintiffs when they employed excessive force, arrested, detained, and imprisoned Plaintiffs for criminal offenses in which the Plaintiffs had not participated.

96.     **WHEREFORE**, Plaintiffs demand that this Court enter judgment against the Defendants in an amount greater than $75,000.00 in damages plus costs and interest.

1438-040/ 314602

## COUNT V: False Arrest

### All Plaintiffs Against All Defendants

97.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

98.     The Defendants violated the Plaintiffs' civil rights and due process rights as set forth in the Declaration of Rights of the Maryland State Constitution. They committed intentional acts of misconduct, employed excessive force upon Plaintiffs, illegally detained and arrested Plaintiffs, falsely imprisoned Plaintiffs, and unlawfully deprived Plaintiffs of their liberty and property.

99.     The identified and unidentified officers in this Complaint acted as the BPD's and the State's agents, servants, and/or employees, when they employed excessive force, arrested, detained, and imprisoned the Plaintiffs without reasonable suspicion or probable cause to believe they had committed any criminal offenses. Further, the Defendants employed excessive force, detained, arrested, and imprisoned the Plaintiffs without legal basis or justification, and Plaintiffs did not have the freedom to leave during the detention, arrest, and imprisonment.

100.    As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses. Moreover, Defendants deprived Plaintiffs of their liberty and property without cause, in contravention of the Maryland State Constitution.

101.    The Defendants' conduct lacked any legal rationale and premised on actual malice and ill will. They intended to harm Plaintiffs when they employed excessive force,

23

arrested, detained, and imprisoned Plaintiffs for criminal offenses in which the Plaintiffs had not participated.

102.   **WHEREFORE**, Plaintiffs demand that this Court enter judgment against the Defendants in an amount greater than $75,000.00 in damages plus costs and interest.

### COUNT VI: Battery

#### All Plaintiffs Against All Defendants

103.   Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

104.   The Defendants violated the Plaintiffs' civil rights and due process rights as set forth in the Declaration of Rights of the Maryland State Constitution. They committed intentional acts of misconduct, employed excessive force upon Plaintiffs, illegally detained and arrested Plaintiffs, falsely imprisoned Plaintiffs, and unlawfully deprived Plaintiffs of their liberty and property.

105.   The identified and unidentified officers in this Complaint acted as the BPD's and the State's agents, servants, and/or employees, when they employed excessive force, arrested, detained, and imprisoned the Plaintiffs without reasonable suspicion or probable cause to believe they had committed any criminal offenses. Further, the Defendants employed excessive force, detained, arrested, and imprisoned the Plaintiffs without legal basis or justification, and Plaintiffs did not have the freedom to leave during the detention, arrest, and imprisonment.

106.   As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses. Moreover,

24

Defendants deprived Plaintiffs of their liberty and property without cause, in contravention of the Maryland State Constitution.

107.    The Defendants' conduct lacked any legal rationale and premised on actual malice and ill will. They intended to harm Plaintiffs when they employed excessive force, arrested, detained, and imprisoned Plaintiffs for criminal offenses in which the Plaintiffs had not participated.

108.    **WHEREFORE**, Plaintiffs demand that this Court enter judgment against the Defendants in an amount greater than $75,000.00 in damages plus costs and interest.

**COUNT VII: Malicious Prosecution**

**Plaintiffs Lomax, Tubman, Glass, Johnson and Fischer Against All Defendants**

109.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

110.    The identified and unidentified officers named in this Complaint, maliciously and without probable cause, charged Plaintiffs with 2nd Degree Assault, Carrying a Dangerous Weapon with Intent to Injure, Rioting, and Disorderly Conduct. Some of these Plaintiffs had not participated in the protests for Mr. Gray, and those who had, had not committed the aforementioned offenses. Therefore, the officers falsely charged these Plaintiffs, demonstrating ill will and improper motive.

111.    Either the State nolle prossed, or a jury acquitted, all Plaintiffs of all of these charges.

112.    As a result of Defendants' conduct, Plaintiffs suffered mental anguish, humiliation, disgrace, loss of dignity, as well as monetary losses for lost wages, legal fees, and other costs and expenses.

25

113.   **WHEREFORE**, Plaintiffs demand this Court enter against the Defendants, in an amount greater than $75,000.00 in damages plus interest and costs.

### COUNT VIII: Pattern or Practice of Constitutional Violations

### All Plaintiffs Against All Defendants

114.   Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

115.   The Defendants in this Complaint acted under the color of state law when they engaged in a pattern and practice of constitutional violations. Defendants violated the Plaintiffs' constitutional rights by employing excessive force, illegally arresting them, falsely imprisoning them, and unlawfully depriving them of their liberty and property. The Defendants' conduct was pervasive and persisted over the course of the protests for Mr. Gray.

116.   Defendant BPD approved or condoned the actions of the identified and unidentified officers listed herein.

117.   As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

118.   **WHEREFORE**, Plaintiffs demand that this Court enter judgement against the Defendants in an amount greater than $75,000.00 plus interest and costs.

### COUNT IX: Civil Conspiracy

### All Plaintiffs Against All Defendants

119.   Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

26

120.    The Defendants in this Complaint conspired to violate the Plaintiffs' constitutional rights by employing excessive force, illegally arresting them, falsely imprisoning them, and unlawfully depriving them of their liberty and property. In furtherance of this conspiracy, Defendants did, in fact, employ excessive force, arrest Plaintiffs, imprison them, and deprive them of their liberty and property without probable cause or reasonable suspicion to believe that they had committed a crime. Defendants conspired to deprive Plaintiffs of their rights demonstrating ill will and improper purpose.

121.    As a result of Defendants' conspiracy and the unlawful or tortious acts committed in furtherance thereof, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses. Moreover, Defendants deprived Plaintiffs of their liberty and property without cause, in contravention of the Maryland State Constitution.

122.    **WHEREFORE,** Plaintiffs demand this Court enter against the Defendants, in an amount greater than $75,000.00 in damages, plus interests and costs.

### COUNT X: Negligence

**All Plaintiffs Against All Defendants**

123.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

124.    The Defendants owed the Plaintiffs a duty to exercise due care while enforcing the law and to avoid causing unjustified physical or mental injury. Defendants also owed Plaintiffs a duty to detain and arrest Plaintiffs in a safe and reasonable manner.

125.    The Defendants breached their duties by using a crowd-dispersal pepper spray on

27

a single individual from only a few feet away, maneuvering an individual using his hair, beating the Plaintiffs, including kicking, punching, and beating with a baton, and handcuffing Plaintiffs with brute force.

126. As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

127. The Defendants' negligence proximately caused the injuries that Plaintiffs suffered. They solely caused these injuries without any fault or contributory negligence of the Plaintiffs.

128. **WHEREFORE**, Plaintiffs demand this Court enter against the Defendants, in an amount greater than $75,000.00 in compensatory damages, plus attorneys' fees, costs and expenses of this lawsuit, and other such relief that this Court deems proper.

### COUNT XI: Gross Negligence

#### All Plaintiffs Against All Defendants

129. Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

130. Defendants engaged in intentional, willful, and wanton misconduct with a reckless disregard for human life as well as the Plaintiffs' rights. They inflicted bodily injury upon Plaintiffs with utter indifference when they used a crowd-dispersal pepper spray on a single individual from only a few feet away, maneuvered an individual using his hair, beat the Plaintiffs, including kicking, punching, and beating with a baton, and handcuffed Plaintiffs with brute force.

28

131.    As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

132.    Defendants' conduct lacked legal justification and remained motivated by ill will and actual malice.

133.    **WHEREFORE,** Plaintiffs demand this Court enter against the Defendants, in an amount greater than $75,000.00 in compensatory damages and $1,000,000.00 in punitive damages, plus attorneys' fees, costs and expenses of this lawsuit, and other such relief that this Court deems proper.

**COUNT XII: Negligent Hiring, Training & Supervision**

**All Plaintiffs Against Defendants Batts, BPD & State of Maryland**

134.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

135.    Defendants Batts, BPD and the State of Maryland maintained a duty to use reasonable care in hiring, training, and supervising individuals competent and fit to perform the duties of a police officer.

136.    Defendants Batts, BPD and the State knew or should have known that the identified and unidentified officers in this Complaint proved unfit for their assigned duties because they unlawfully and unconstitutionally employed excessive force, arrested, and imprisoned the Plaintiffs.

137.    Defendants Batts, BPD and the State knew or should have known that the identified and unidentified officers in this Complaint would come into contact with the public.

29

By virtue of Defendants Batts, BPD and the State's negligent hiring, training, and supervision, the risk that the identified and unidentified officers would violate the constitutional rights of Plaintiffs was foreseeable.

138.    As a result of Defendants Batts, BPD and the State's negligence in hiring, training, and supervising the identified and unidentified officers, Plaintiffs suffered physical, emotional, mental, and financial injuries, including, but not limited to, abrasions, contusions, nerve damage, internal organ injury, pain and suffering, mental anguish, humiliation, disgrace, loss of dignity, costs and expenses of medical and legal proceedings, lost wages, and other expenses.

139.    **WHEREFORE**, Plaintiffs demand this Court enter against the Defendants, in an amount greater than $75,000.00 in damages, plus interest and costs.

Respectfully submitted,

William H. Murphy, Jr.
Nicholas A. Szokoly
Jason Downs
Rima A. Kikani
Murphy, Falcon & Murphy, PA
One South Street, 23rd Floor
Baltimore, Maryland 21202
(410) 951-8744
*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs, by undersigned counsel, hereby demand a trial by jury.

Rima A. Kikani

30

1438-040/ 314602

| FROM | NAME & TITLE | Aaron W. Whitcomb, (5-7390) Special Investigation Supervisor | CITY OF BALTIMORE |
|---|---|---|---|
| | AGENCY NAME & ADDRESS | Department of Law - C.B.I. Room 31, City Hall | **MEMO** |
| | SUBJECT | Claim of: Larry Lomax Our Claim No: 150002420-103   D/I: 5/2/15 LOc.: Pennsylvania & North | |

TO

DATE:
November 6, 2015

Rodney Hill
Maj. Dennis L. Smith
Stacey Cherry
Kisha Brown
Darryl Desousa
Police Dept. /Legal Affairs
601 E. Fayette Street


　　　　Be advised that the subject has presented a claim against the Mayor and City Council of Baltimore for property damages and/or personal injuries, allegedly sustained on the above date. A copy of the claim is enclosed.

　　　　This matter is being referred to you for your attention and disposition.



AWW/cbd

Attachment



MURPHY FALCON MURPHY
—————— KOCH · XINIS ——————

October 22, 2015

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

George Nilson, Esquire
Baltimore City Solicitor
Baltimore City Law Department
100 N. Holiday Street, Suite 101
Baltimore, MD 21202

|       |                  |                                      |
|-------|------------------|--------------------------------------|
| Re:   | Claim            | Larry Lomax                          |
|       | Date of Incident | 5/2/15                               |
|       | Notice of Claim  | State of Maryland; City of Baltimore |

Dear Mr. Nilson:

Pursuant to Md. Code Ann., Courts and Judicial Proceedings §5-301 et seq., please accept this letter as formal notice that Larry Lomax intends to file claims against the City of Baltimore, its employees, agents and representatives, and any and all heretofore unidentified governments, agencies and/or individuals, seeking damages arising out of an incident where Mr. Lomax was maced, assaulted, and subjected to excessive force during a false arrest on May 2, 2015.

Briefly, during the evening of May 2, 2015, Mr. Lomax was exercising his First Amendment right to peacefully assemble and protest police brutality. Mr. Lomax walked in the middle of the street near the intersection Pennsylvania and North Avenues in Baltimore, Maryland. Mr. Lomax did not threaten the officers nor did he attempt to assault any officer. An officer then sprayed mace directly into Mr. Lomax's eyes from a distance of less than two feet. Mr. Lomax continued to stand peacefully in the street after being sprayed with mace. After standing peacefully for several seconds, Mr. Lomax took approximately four steps backwards – away from the officers. Despite the fact that Mr. Lomax was moving away from the officers, the officers grabbed Mr. Lomax by his hair and slammed him to the ground causing several injuries. This incident of police brutality was captured by video and audio, and was shown by several news media outlets.

These claims for negligence, gross negligence, and intentional wrongdoing include, but are not limited to, assault, state and federal civil rights violations, and any and all other tort claims that may be discovered. The specific damages demanded total four hundred thousand dollars ($400,000.00).

Page 2 of 2

If you have any questions, I can be reached at 410-951-8744.

Very truly yours,

Jason Downs

cc:     Wylie M. Stecklow (Co-Counsel)
        Stecklow & Thompson
        217 Centre Street, 6th Floor
        New York, NY 10013